## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

SCOTT PIPER,

        Plaintiff,                           Case No.

v.                                       Hon.

THE BOARD OF REGENTS OF THE
UNIVERSITY OF MICHIGAN, and DAVID
GIER, in his individual and official capacities,

        Defendants.

_____

FABIOLA A. GALGUERA (P84212)
NACHTLAW, P.C.
*Attorneys for Plaintiff*
501 Avis Drive, Suite 3
Ann Arbor, Michigan 48108
(734) 663-7550
fgalguera@nachtlaw.com

_____

## **PLAINTIFF'S FIRST COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, Scott Piper, by and through his attorneys,

NACHTLAW, P.C. and respectfully alleges the following:

## **PARTIES, VENUE, AND JURISDICTION**

1.  Plaintiff Scott Piper (hereinafter referred to as "Plaintiff") is an individual

residing in Ann Arbor, Michigan, Washtenaw County

2. Defendant University of Michigan is a publicly funded and state-operated university located in Ann Arbor, Michigan. UM receives state and federal funding for the provision of higher education.

3. Defendant University of Michigan Board of Regents is the publicly elected governing body of UM.

4. Defendant David Gier is the Dean of U-M's School of Music, Theatre & Dance. He is sued in his personal and official capacities.

5. The events underlying this Complaint occurred in Ann Arbor, Michigan, within the Eastern District of Michigan.

6. This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as well as supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7. A Charge of Discrimination was filed with the U.S. Equal Employment Opportunity Commission. A Notice of Right to Sue was issued on February 25, 2026, and this Complaint is timely filed.

## STATEMENT OF FACTS

8. Plaintiff, a Black Latino man, worked for more than twelve years at the University of Michigan School of Music, Theatre & Dance (hereinafter referred to as SMTD").

9. Leading up to his improper termination, Plaintiff served the University and his Department well, earning many positive evaluations from faculty, staff, and his students.

10. For many years, Plaintiff, as faculty and then as Chair of the Department of Voice, did what he could to improve SMTD's culture.

11. Plaintiff would come to recognize that his efforts regarding improving culture would only go so far as the faculty member he was looking at; faculty were not all being treated the same.

12. Female faculty were rarely disciplined for issues with students.

13. Complaints made by students against white male faculty were handled covertly and with an emphasis on protecting the professor.

14. Plaintiff bumped heads many times over this precise issue with other leadership within SMTD.

15. Plaintiff attempted many times throughout his tenure to raise his many concerns to Defendant Gier with no success.

16. The opportunity to punish Plaintiff would eventually come when one of his students filed a Title IX Complaint against him, of which he was notified on or around May 17, 2024.

17. What followed was a multi-month investigation and hearing process, riddled with issues and deprivations of Plaintiff's rights by Defendants.

18. Plaintiff tried many times to dispute the translations being used of his words in Spanish by non-native Spanish speakers as well as question the legitimacy of an audio recording which served as the complainant's central piece of evidence against him.

19. On or about October 11, 2024, a decisionmaker found Plaintiff responsible for some, but not all, of the allegations brought against him.

20. Despite the process not being complete as the appeal window was still open and corrective action had not yet been issued, Defendants put Plaintiff on administrative leave.

21. On or about November 22, 2024, Plaintiff filed an appeal through counsel and asked Defendant U-M to reverse the responsibility finding.

22. The appeal identified two grounds for reversal: procedural irregularities that materially affected the outcome and bias against respondents generally and Plaintiff specifically.

23. The appeal explained that the hearing officer misapplied the University's Federal Rule Sexual and Gender-Based Misconduct policy and the University's Other Sexual and Gender-Based Misconduct policy.

24. The appeal challenged the decisionmakers' loose use of the phrase "severe, pervasive, and objectively offensive" and explained that the hearing officer applied

a standard that contradicted well founded case law regarding Title IX and its definitions.

25. The appeal highlighted that the decisionmaker relied on a single partial conversation and failed to identify a single piece of evidence showing that the student in this matter had suffered *any* educational impact whatsoever from the allegations brought forth.

26. The appeal critically pointed out that the decisionmaker credited incomplete recordings, self-serving interpretations, silence during a partial recording, and disputed language issues while discounting Plaintiff's consistent testimony and contrary record evidence.

27. The appeal explained that the decisionmaker relied on an inaccurate and context-stripped treatment of Spanish-language words and failed to give proper weight to native-speaker context, incomplete recordings, and missing conversation history.

28. To this day, despite Plaintiff's repeated concern on this front, not once did Defendants take any steps to speak to a native Spanish speaker upon reasonable belief.

29. The appeal identified record facts that undermined the complainant's credibility, including continued personal communications, continued requests for help and guidance, and timing that followed rumors about Plaintiff's personal life.

30. The University denied Plaintiff's appeal and allowed the tainted process to drive the next phase of discipline.

31. Critically, in the January 2025 appeal decision, no real attention was paid to Plaintiff's concerns about bias or disparate treatment.

32. Neither the appellate decisionmaker, hired by the University, nor Defendants gave any heed to these grave concerns.

33. On or March 18, 2025, the University notified Plaintiff that it recommended his dismissal from employment as a tenured professor.

34. Defendants drew every basis for the dismissal recommendation from the Title IX process that Plaintiff had repeatedly flagged as biased, irregular, and unfair.

35. Plaintiff subsequently requested an opportunity to dispute his dismissal from tenure; these dates were set for May of 2025.

36. During the May 2025 tenure proceedings, Plaintiff again requested access to data and information necessary to defend himself, such as access to devices only Defendants had access to after his removal, like his iPad.

37. Defendants continued to refuse to provide the information Plaintiff needed to mount a meaningful defense.

38. The hearing body, organized and assembled by the University's Senate Advisory Committee on University Affairs (hereinafter referred to as "SACUA"), relied almost exclusively on the flawed Title IX record.

39. The hearing body disregarded the procedural and bias concerns that Plaintiff had identified.

40. The hearing body rubber-stamped the prior determination and approved Plaintiff's dismissal from tenure.

41. Plaintiff, shocked that his concerns were repeatedly falling on deaf ears, took his final opportunity to have someone at the University hear him out by pursuing a review of the hearing board's decision.

42. Plaintiff's May 30, 2025 SACUA review presentation exposed contradictions in the decision-making record and showed that the decision relied on contested facts while disavowing any ability to resolve those same facts.

43. The SACUA review presentation identified a central contradiction: the hearing body described disputed matters as agreed-upon events, including whether Plaintiff invited only one student to an out-of-town event, whether one ticket existed, whether the complainant wanted help with groceries when she alleged she did not, the nature, if any, of physical contact, and whether a recital interaction caused discomfort despite Plaintiff's clear, repeated, and consistent denials of the allegations brought forth and the events portrayed.

44. The SACUA review presentation identified additional patterns of contradictions: the hearing body claimed it could not determine which competing

account was accurate, but clearly made findings of facts in support of the complainant's competing narrative.

45. The SACUA review presentation showed that Defendants ignored evidence of continued communication between the complainant and Dr. Piper, including text exchanges about work, money stress, moving, words of support and appreciation, and requests for assistance on the most menial of tasks, such as asking him to print flyers out for her.

46. The SACUA review presentation further identified unexamined inconsistencies in the complainant's testimony throughout the Title IX and faculty hearing process.

47. The SACUA presentation identified contradictions about the complainant's decision to record Plaintiff, including testimony that she decided on the spot while already in the room and testimony that she had felt uncomfortable for weeks or months and wanted to prove whether her subjective "fears" had merit.

48. Defendants went out of their way to ignore any and all evidence that contradicted the complainants purported concerns and "fears."

49. Defendants ignored the contradictions, inconsistencies, and evidentiary gaps that Plaintiff once again placed before them.

50. The June 2025 decision following the review reflected a predetermined outcome rather than a good-faith review.

51. The decision, once again, did not grapple with the subject matter of Plaintiff's issues and concern.

52. The recommendation for dismissal was to the President of Defendant U-M, which was subsequently signed on July 17, 2025.

53. Defendants chose a career-ending sanction for Plaintiff's first disciplinary issue despite giving white professors leeway in light of repeat complaints and patterns of problematic behavior and despite the defects in Plaintiff's situation particularly which resulted in an unfair and inaccurate finding of responsibility.

54. Defendant Gier, despite knowing what Plaintiff was going through and knowing the concerns he had about the processes he was being forced through, did nothing to elevate Plaintiff's concerns, instead facilitating, as Dean, repeated violations against his rights.

55. Defendants treated Plaintiff differently from similarly situated individuals and failed to address race-based disparate treatment concerns, despite his status as a Black Latino man.

56. Defendants subjected Plaintiff to gender-based bias as the male respondent in a Title IX process and then used that biased process to end his employment.

57. Defendants failed to provide Plaintiff with evidence in the University's possession that he needed to meaningfully defend himself.

58. Defendants failed to follow their own policies, procedures, and faculty-governance obligations.

59. Defendants breached express and implied contractual obligations governing Plaintiff's employment and faculty rights.

60. Defendants damaged Plaintiff's income, employment opportunities, professional reputation, academic standing, emotional health, career advancement, and ability to participate fully in his academic field.

61. Defendants acted with reckless disregard for Plaintiff's rights, well-being, professional standing, and career.

## COUNT I
**Violation of the Due Process Clause of the
Fourteenth Amendment to the U.S. Constitution
42 U.S.C. § 1983**
*(against the individual defendants for money damages in their personal capacities
and injunctive relief in their official capacities)*

62. Plaintiff incorporates the preceding allegations as if fully restated herein.

63. The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that "no state shall… deprive any person of life, liberty, or property, without due process of law."

64. 42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

65. Defendants acted under color of law when they engaged in the conduct described herein, including, but not limited to, removing Plaintiff from his administrative and faculty positions, placing him on administrative leave, failing to give him access to devices and resources which would have allowed him to better defend himself, cherry-picking evidence, failing to give evidence equal weight, and, ultimately, terminating him.

66. Plaintiff had a constitutionally protected property interest in his administrative and faculty role because of the importance of these positions to his scholarship and standing in the academic community, *see Smock v. Bd. of Regents of Univ. of Michigan*, 353 F. Supp. 3d 651, 657 (E.D. Mich. 2018) (citing *Sharp v. Lindsey*, 285 F.3d 479, 489 (6th Cir. 2002)); *see also Gunasekera v. Irwin*, 551 F.3d 461, 471 (6th Cir. 2009).

67. Because the reputational stigma Defendants fostered against Plaintiff is related to his demotion, paid leave, and then subsequent termination, he also had a constitutionally protected liberty interest in his good name and reputation, *see Murtha v. Rossford Exempted Vill. Sch.*, No. 21-3449, 2021 WL 4950238, at *5 (6th Cir. Oct. 25, 2021).

68. It is "well-settled" for purposes of § 1983 that Plaintiff's constitutionally protected liberty interest in his "reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth

amendment." *Gallow v. Pittis*, No. 2:17-CV-1007, 2019 WL 4192717, at *4 (S.D. Ohio Sept. 4, 2019) (citing *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002)).

69. Accordingly, Defendants' actions outlined *supra* violated Plaintiff's clearly established constitutional rights, of which any reasonable person in their position would have known; they are therefore not entitled to qualified immunity.

70. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, removal from his positions at UM; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

71. Plaintiff is entitled to punitive damages because Defendants engaged in the above-described conduct with malicious and evil intent, in callous disregard of Plaintiff's federally protected rights.

## COUNT II
### Violation of the Equal Protection Clause of the
### Fourteenth Amendment to the U.S. Constitution
### 42 U.S.C. § 1983
*(against the individual defendants for money damages in their personal capacities and injunctive relief in their official capacities)*

72. Plaintiff incorporates the preceding allegations as if fully restated herein.

73. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides that "no state shall… deny to any person within its jurisdiction the equal protection of the laws."

74. 42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

75. Defendants acted under color of law when they engaged in the conduct described herein, including, but not limited to, removing Plaintiff from his administrative and faculty positions, placing him on administrative leave, failing to give him access to devices and resources which would have allowed him to better defend himself, cherry-picking evidence, failing to give evidence equal weight, and, ultimately, terminating him

76. Defendants' actions were motivated by racial and gender discrimination on the basis of Plaintiff being a Black Latino man.

77. Defendants thereby violated Plaintiff's clearly established constitutional right to equal protection of the laws, of which any reasonable person in their position would have known; they are therefore not entitled to qualified immunity.

78. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, removal from his positions at UM; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

79. Plaintiff is entitled to punitive damages because Defendants engaged in the above-described conduct with malicious and evil intent, in callous disregard of Plaintiff's federally protected rights.

**COUNT III**
**Sex Discrimination in Violation of Title IX**
**20 U.S.C. § 1681 *et. seq.***
*(against Defendants University of Michigan and the University of Michigan Board of Regents)*

80. Plaintiff repeats and realleges the paragraphs set forth above with the same force and effect as though set forth in full herein.

81. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

82. Plaintiff is a man.

83. Defendants University of Michigan and the University of Michigan Board of Regents are institutions receiving Federal financial assistance.

84. Plaintiff was qualified for his positions at the University.

85. Defendants subjected Plaintiff to intentional discrimination including, but not limited to, removing Plaintiff from his administrative and faculty positions, placing him on administrative leave, failing to give him access to devices and

resources which would have allowed him to better defend himself, cherry-picking evidence, and, failing to give evidence equal weight.

86. Defendants applied their policies and procedures in a manner that discriminated against Plaintiff on the basis of sex, causing him serious and unjustified damage.

87. Defendants treated Plaintiff less favorably than other comparable female professors.

88. Sex-based bias was a motivating factor behind Defendants' commencement of disciplinary proceedings against Plaintiff and deprivation of his rights throughout those processes.

89. Based on the foregoing, Plaintiff was subjected to biased, prejudiced, and unfair treatment in violation of Title IX, motivated by a desire to punish him for his gender.

90. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, removal from his positions at UM; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

**COUNT IV**
**Retaliation in Violation of Title IX**
**20 U.S.C. § 1681 *et. seq.***

*(against Defendants University of Michigan and the University of Michigan Board of Regents)*

91. Plaintiff incorporates the preceding allegations as if fully restated herein.

92. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

93. Plaintiff engaged in protected activity by opposing the discrimination he faced pre-dating the University's Title IX investigation and continuing throughout his time at the University up to his termination.

94. Defendants were aware of Plaintiff's protected activity.

95. Defendants subjected Plaintiff to adverse employment actions in retaliation for his protected activity, including, but not limited to, by placing him on administrative leave and subsequently terminating him.

96. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, removal from his positions at UM; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT V
**Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964**

*(against Defendants University of Michigan and the University of Michigan Board of Regents)*

97. Plaintiff incorporates the preceding allegations as if fully restated herein.

98. Title VII makes it unlawful for an employer to discharge or otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment because of sex. 42 USC § 2000e-2.

99. Plaintiff is a man.

100. Plaintiff performed his job satisfactorily and was qualified for his position within the Department.

101. Defendant U-M subjected Plaintiff to an adverse employment action by, amongst other actions, discounting his evidence during his name-clearing process and terminating him employment.

102. Defendant U-M took these actions because Plaintiff is a man.

103. Defendant U-M's stated reason for termination was pretextual because, even though Plaintiff provided evidence which disproved many allegations and cast doubt on the credibility of those allegations made against him, Defendant U-M purposely disregarded his concerns and terminated him anyways.

104. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost benefits, emotional distress, reputational harm, medical harm, and other damages.

## COUNT VI
**Sex Retaliation in Violation of Title VII of the Civil Rights Act of 1964**

*(against Defendants University of Michigan and the University of Michigan Board of Regents)*

105.   Plaintiff incorporates the preceding allegations as if fully restated herein.

106.   Title VII prohibits an employer from discriminating against an employee because the employee opposed a practice made unlawful by Title VII or because the employee made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under Title VII 42 USC § 2000e-3.

107.   Plaintiff opposed discriminatory and disparate treatment when he challenged the false and out-of-context allegations against him, identified that he was being treated unfairly and differently, and provided evidence disproving the allegations.

108.   Defendant U-M knew of Plaintiff's opposition because Plaintiff submitted his concerns, in writing, repeatedly.

109.   Defendant U-M terminated Plaintiff shortly after he opposed the discriminatory and disparate treatment.

110.   Defendant U-M's failure to conduct a fair investigation, its disregard of evidence favorable to Plaintiff, and the close timing between Plaintiff's opposition and termination support a causal connection between Plaintiff's protected activity and the adverse employment action.

111. As a direct and proximate result of Defendant U-M's unlawful conduct, Plaintiff suffered lost wages, lost benefits, emotional distress, reputational harm, medical harm, and other damages.

## COUNT VII
**Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964
42 U.S.C. § 2000e *et seq.***
*(against Defendants University of Michigan and the University of Michigan Board of Regents)*

112. Plaintiff incorporates the preceding allegations as if fully restated herein.

113. At all relevant times, Defendants employed greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b) and (f).

114. Title VII prohibits discrimination in employment on the basis of race.

115. Plaintiff was qualified for his positions within the University.

116. Defendants subjected Plaintiff to intentional discrimination based on his race by removing Plaintiff from his administrative and faculty positions, placing him on administrative leave, failing to give him access to devices and resources which would have allowed him to better defend himself, cherry-picking evidence, and failing to give evidence equal weight.

117. Bias against people of color was a motivating factor behind Defendants' actions.

118. Defendants applied their policies and procedures in a manner that discriminated against Plaintiff on the basis of race, causing him serious and unjustified damage.

119. Based on the foregoing, Plaintiff was subjected to biased, prejudiced, and unfair treatment in violation of Title VII.

120. Defendants' actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling him to punitive damages.

121. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, removal from his positions at U-M; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future.

## COUNT VIII
**Race Retaliation in Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e *et seq*.**
*(against Defendants University of Michigan and the University of Michigan Board of Regents)*

122. Plaintiff incorporates the preceding allegations as if fully restated herein.

123. Title VII prohibits an employer from discriminating against an employee because the employee opposed a practice made unlawful by Title VII or

because the employee made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under Title VII 42 USC § 2000e-3.

124.  Plaintiff opposed discriminatory and disparate treatment when he challenged the false and out-of-context allegations against him, identified that he was being treated unfairly and differently, and provided evidence disproving the allegations.

125.  Defendant U-M knew of Plaintiff's opposition because Plaintiff submitted his concerns, in writing, repeatedly.

126.  Defendant U-M terminated Plaintiff shortly after he opposed the discriminatory and disparate treatment.

127.  Defendant U-M's failure to conduct a fair investigation, its disregard of evidence favorable to Plaintiff, and the close timing between Plaintiff's opposition and termination support a causal connection between Plaintiff's protected activity and the adverse employment action.

128.  As a direct and proximate result of Defendant U-M's unlawful conduct, Plaintiff suffered lost wages, lost benefits, emotional distress, reputational harm, medical harm, and other damages.

## COUNT IX
**Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d**
*(against Defendants University of Michigan and the University of Michigan Board of Regents)*

129.   Plaintiff incorporates the preceding allegations as if fully restated herein.

130.   Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

131.   As a public university, Defendant U-M received and continues to receive federal financial assistance.

132.   Plaintiff is a Black Latino man.

133.   Defendant U-M subjected Plaintiff to intentional discrimination, excluded him from participation in, and denied him the benefits offered by U-M by the actions described herein.

134.   Defendant U-M's discrimination against Plaintiff deprived hundreds of students of the education they were supposed to be receiving as the ultimate beneficiaries of the federal funding received by Defendant U-M.

135.   Plaintiff has suffered damages and injury and will continue to suffer damages including loss of income and earning capacity, injury to his reputation, emotional distress, and other losses because of Defendant U-M's unlawful acts set forth herein and to be proved at trial.

136.  As a direct and proximate result of Defendant U-M's unlawful actions, Plaintiff has had to retain the services of an attorney and will continue to so suffer in the future.

## COUNT X
### Sex Discrimination in Violation of ELCRA
### M.C.L. 37.2201 *et seq.*
*(against Defendants University of Michigan and the University of Michigan Board of Regents)*

137.  Plaintiff incorporates the preceding allegations as if fully restated herein.

138.  At all relevant times, Plaintiff was an employee and Defendants were employers as defined by ELCRA.

139.  The State of Michigan has waived its Eleventh Amendment sovereign immunity and consented to suit under ELCRA on behalf of Defendants University of Michigan and the University of Michigan Board of Regents, which are arms of the state.

140.  Plaintiff is a member of a protected class based on his gender.

141.  Plaintiff was qualified for his positions at the University.

142.  Defendants subjected Plaintiff to intentional discrimination including, but not limited to, by removing Plaintiff from his administrative and faculty positions, placing him on administrative leave, failing to give him access to devices and resources which would have allowed him to better defend himself, cherry-picking evidence, and, failing to give evidence equal weight.

143.    Defendants treated Plaintiff less favorably than other comparable SMTD faculty who were not members of Plaintiff's protected class.

144.    But for Plaintiff's gender, Defendants would not have taken adverse employment actions against him.

145.    Defendants acted willfully.

146.    Gender bias was a motivating factor behind Defendants' commencement of disciplinary proceedings and corrective action against Plaintiff.

147.    Defendants applied their policies and procedures in a manner that discriminated against Plaintiff on the basis of sex, causing him serious and unjustified damage.

148.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, removal from his positions at UM; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

149.    Plaintiff is entitled to exemplary damages because Defendants engaged in the above-described conduct with malice and reckless indifference to his federally protected rights.

### COUNT XI
### Sex Retaliation in Violation of ELCRA
### M.C.L. 37.2201 et seq.

*(against Defendants University of Michigan and the University of Michigan Board of Regents)*

150. Plaintiff incorporates the preceding allegations as if fully restated herein.

151. At all relevant times, Plaintiff was an employee and Defendants were employers defined by ELCRA.

152. The State of Michigan has waived its Eleventh Amendment sovereign immunity and consented to suit under ELCRA on behalf of Defendants University of Michigan and the University of Michigan Board of Regents, which are arms of the state.

153. Plaintiff is a man

154. Plaintiff engaged in protected activity by opposing the discrimination he faced at work for being a man.

155. Defendants were aware of Plaintiff's protected activity.

156. Defendants subjected Plaintiff to adverse employment actions in retaliation for his protected activity, including, but not limited to, removing Plaintiff from his administrative and faculty positions, placing him on administrative leave, failing to give him access to devices and resources which would have allowed him to better defend himself, cherry-picking evidence, and, failing to give evidence equal weight.

157. But for Plaintiff's protected activity, Defendants would not have taken adverse employment actions against him.

158. Defendants acted willfully.

159. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, removal from his positions at UM; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

160. Plaintiff is entitled to exemplary damages because Defendants engaged in the above-described conduct with malice and reckless indifference to his federally protected rights.

**<u>COUNT XII</u>**
**Race Discrimination in Violation of ELCRA**
**M.C.L. 37.2201 *et seq.***
*(against University of Michigan and the University of Michigan Board of Regents)*

161. Plaintiff incorporates the preceding allegations as if fully restated herein.

162. At all relevant times, Plaintiff was an employee and Defendants were employers as defined by ELCRA.

163. The State of Michigan has waived its Eleventh Amendment sovereign immunity and consented to suit under ELCRA on behalf of Defendants University

of Michigan and the University of Michigan Board of Regents, which are arms of the state.

164. ELCRA prohibits discrimination in employment on the basis of race.

165. Plaintiff was qualified for his position within his Department.

166. Defendants subjected Plaintiff to intentional discrimination based on his race as Black Latino by removing Plaintiff from his administrative and faculty positions, placing him on administrative leave, failing to give him access to devices and resources which would have allowed him to better defend himself, cherry-picking evidence, and, failing to give evidence equal weight.

167. Bias against people of color was a motivating factor behind Defendants' decision not to reappoint Plaintiff to the faculty.

168. Defendants applied their policies and procedures in a manner that discriminated against Plaintiff on the basis of race, causing him serious and unjustified damage.

169. Based on the foregoing, Plaintiff was subjected to biased, prejudiced, and unfair treatment in violation of ELCRA.

170. Defendants acted willfully.

171. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, removal from her positions at U-M; loss of income; loss of career

opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT XII
### Race Retaliation in Violation of ELCRA
### M.C.L. 37.2201 *et seq.*
*(against University of Michigan and the University of Michigan Board of Regents)*

172. Plaintiff incorporates the preceding allegations as if fully restated herein.

173. At all relevant times, Plaintiff was an employee and Defendants were employers defined by ELCRA.

174. The State of Michigan has waived its Eleventh Amendment sovereign immunity and consented to suit under ELCRA on behalf of Defendants University of Michigan and the University of Michigan Board of Regents, which are arms of the state.

175. Plaintiff is a Black Latino man.

176. Plaintiff engaged in protected activity by opposing the discrimination he faced at work for being a Black Latino man.

177. Defendants were aware of Plaintiff's protected activity.

178. Defendants subjected Plaintiff to adverse employment actions in retaliation for his protected activity, including, but not limited to, removing Plaintiff from his administrative and faculty positions, placing him on administrative leave,

failing to give him access to devices and resources which would have allowed him to better defend himself, cherry-picking evidence, and, failing to give evidence equal weight.

179.   But for Plaintiff's protected activity, Defendants would not have taken adverse employment actions against him.

180.   Defendants acted willfully.

181.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, removal from his positions at UM; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

182.   Plaintiff is entitled to exemplary damages because Defendants engaged in the above-described conduct with malice and reckless indifference to his federally protected rights.

## COUNT XIII
### Breach of Contract

183.   Plaintiff incorporates the preceding allegations as if fully restated herein.

184.   A contractual relationship existed between Plaintiff and the University of Michigan, with legally binding promises being contained in not only his employment agreement but in the University's policies and procedures.

185.   Those policies and procedures outline how the University must, among other things, investigate employees and how punishment is to be given to employees found responsible for violations of University policy.

186.   Defendants were required to follow these written policies.

187.   Based on the facts set forth in this second amended complaint, Defendants materially breached its agreements, express and/or implied, when they punished Plaintiff and actively ignored both his evidence and complaints of disparate treatment.

188.   Defendants also misapplied their policies and procedures to discriminate against Plaintiff on the basis of gender and race, causing him serious and unjustified damage.

189.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, removal from her positions at U-M; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future. Plaintiff has also been forced to incur court costs and attorney's fees.

## COUNT XIV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### *(As to Defendant Gier)*

190. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

191. Defendant Gier's conduct, described above, was so outrageous in character, and so extreme in degree, as to go above all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

192. Defendant Gier's conduct amounted to intentional infliction of emotional distress and caused damages to Plaintiff as described herein.

## COUNT IX
## GROSS NEGLIGENCE
### *(As to Defendant Gier)*

193. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

194. The individual Defendant's conduct, described above, was "so reckless as to demonstrate a substantial lack of concern for whether an injury results", constituting gross negligence under Michigan law. MCL 691.1407(8)(a).

195. Defendant is not therefore not entitled to governmental immunity.

196. The individual Defendant's conduct, described above, was a direct and proximate cause of injury to Plaintiff described herein

## RELIEF REQUESTED

WHEREFORE, Plaintiff Scott Piper respectfully requests that this Court enter judgment in his favor and against Defendants and award the following relief:

a.  A declaration that Defendant violated Plaintiff's rights under the 42 USC 1983, Title IX, Title VII, Title VI, the ELCRA, and Michigan law;

b.  Back pay, front pay, lost benefits, and all other economic damages;

c.  Compensatory damages for emotional distress, humiliation, reputational harm, medical harm, and other non-economic injuries;

d.  Punitive damages to the extent available under federal law;

e.  Exemplary damages to the extent available under Michigan law;

f.  Pre-judgment and post-judgment interest;

g.  Reasonable attorney fees, expert fees, and costs to the extent allowed by law.

h.  Expungement or correction of Defendant's records concerning the false allegations and termination;

i.  Conversion of Plaintiff's termination to a resignation or other equitable relief necessary to remedy the harm caused by Defendant's conduct;

j.  Reinstatement or front pay in lieu of reinstatement;

k.  Any other legal or equitable relief the Court deems just and proper.

## JURY DEMAND

Plaintiff Scott Piper, by and through his attorneys, NACHTLAW, P.C., hereby demands a trial by jury of the issues in the above-captioned cause of action.

Respectfully submitted,

NACHTLAW, P.C.

/s/ Fabiola A. Galguera_____
Fabiola A. Galguera
Attorney for Plaintiff
501 Avis Drive, Suite 3
Ann Arbor, MI  48108
 (734) 663-7550
 fgalguera@nachtlaw.com

Dated: May 26, 2026